WILLIAM H. BURGESS, Respondent, *v.* WALTER S. BADGER, Appellant.

*Liquidating partner — not entitled to compensation for closing up the firm business.*

In the absence of an agreement, express or implied, a liquidating partner, in case of the voluntary dissolution of the firm, is not entitled to compensation for liquidating the affairs of the partnership.

APPEAL by the defendant, Walter S. Badger, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 29th day of June, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the defendant's counterclaim and directing judgment in favor of the plaintiff for damages and costs.

This action was brought for an accounting between partners. October 15, 1890, the litigants executed a written contract by which they became equal partners under the firm name of W. S. Badger & Co., "for the transaction of the commission dry goods business in the city of New York and city of Boston." By the first article of the contract it was agreed that the partnership should begin October 15, 1890, and end October 15, 1891, unless previously dissolved by notice or by an operation of law for a cause other than the death of one of the partners. The following articles are the ones which relate to the claims made by the parties in this action :

"*Article second.* Said Badger shall not be required to contribute any capital to said firm, but may do so with the consent of said Burgess; but said Burgess shall contribute such amount of capital to the firm from time to time as shall be reasonably necessary for the requirements of the business of the firm, but he shall not have the right or be bound to contribute as capital any more than that amount.

"*Article twelfth.* No advance shall be made by either partner on goods consigned to the firm, exceeding two-thirds of the fair market value at the time of the advance of the goods upon which the advance is made.

"*Article thirteenth.* In case of the death of either partner during the continuance of the partnership, the partnership shall not

thereby be dissolved, but shall continue for six months thereafter, and the estate of the deceased partner shall be entitled to the same share of the profits of the business during such six months, and bear, sustain and pay the same share of the losses and expenses of the business during that period which the deceased partner would have been entitled to or been bound to bear, sustain and pay in case he had lived.

"*Article fourteenth.* Either partner may dissolve said partnership at any time, whether during or at the expiration of said one year, or afterwards, by giving six months' notice in writing of his intention to dissolve the same to his co-partner.

"*Article fifteenth.* And it is expressly provided, notwithstanding the foregoing provisions, that, if either partner shall commit any substantial breach of any of these articles of partnership, the other partner may thereupon, or at any time thereafter, if he so elects, dissolve said partnership without giving any previous notice.

" *Article sixteenth.* Upon the dissolution of said partnership, all the assets and property of said firm shall be sold and converted into money with all reasonable dispatch, except debts owing to it, and those shall be collected with all reasonable dispatch, and such as shall not be collectible shall be sold and converted into money. The proceeds of the sales of its assets and property, including the proceeds of the sales of any debts, and also the money collected on debts owing to it, shall be applied, first, to pay the debts of the firm to others than the partners therein, and after the payment thereof in full then, next, to the payment to each partner of what shall be owing by the firm to him for capital contributed by him to the firm and interest thereon, or money lent by him to the firm and interest thereon, and, after the payment thereof in full, the surplus shall be divided amongst the parties according to their respective interests therein."

On the 15th of September, 1891, the partnership was dissolved, and it was then agreed that the defendant should liquidate its affairs, who, thereupon, from time to time, converted the assets of the firm into money and paid over large sums to the plaintiff. On the 29th of April, 1892, the defendant delivered to the plaintiff the following account:

" W. H. Burgess,
           " In account with W. S. Badger & Co.
                "Interest to Apl. 29, 1892.

|  |  |  | " *Dr.* | *Cr.* |
|---|---|---|---|---|
| " Feb. | 1. | By balance................ .......... | | $6,225 68 |
| " Apl. 20. | " | Interest to date... .... .......... | | 81 97 |
| " " | " | Share of Profit & Loss.. .......... | | 5,250 99 |
| " Apl. 29. | | To Cash, Expense, rent, &c., pd. A. Van Bergen & Co. | $2,022 27 | .......... |
| " " | " | pd. W. S. Badger, Liquidating business......... | 10,000 00 | .......... |
| | " Balance.................... | | .......... | 463 63 |
| | | | $12,022 27 | $12,022 27 |
| | " To Balance.................. | | $463 63 | |

" E. & O. E.
                               " W. S. BADGER & CO.,
                                        " McA."

The plaintiff acknowledged the correctness of the statement, except the items $2,022.27 and $10,000, which he refused to allow, and, on the 11th of January, 1893, brought this action. The defendant in his answer omits the item of $2,022.27, and increases the charge for liquidating the business to $15,000, and also alleges that the plaintiff refused to perform his covenant to furnish capital, as provided in the second article of the partnership agreement, to his damage in the sum of $25,000. The plaintiff by his reply denied the allegations contained in the answer, setting forth counterclaims. The issue thus joined was tried before a Special Term, which found all of the material facts in favor of the plaintiff.

*John J. Adams,* for the appellant.

*Payson Merrill,* for the respondent.

FOLLETT, J.:

The court held that the defendant had failed to establish his alleged counterclaim and that he was not entitled to compensation for liquidating the business, and that the plaintiff was entitled to recover $11,559.67, the amount shown by defendant's statement of April

29, 1892, less the items of $10,000 and $2,022.27, aside from an error in the item "interest to date," which was found to be $83 instead of $81.97, a difference of $1.03. But two questions are presented on this appeal : (1) Are the third and eighth findings of fact sustained by, or are they contrary to, the weight of evidence ? (2) Is the defendant entitled to compensation for liquidating the affairs of the firm ?

"III. On September 15, 1891, the said firm was duly dissolved by mutual consent, the particular time of such dissolution being determined by the defendant."

"VIII. The plaintiff Burgess complied with the provisions of the partnership articles requiring him to contribute such amount of capital to the firm from time to time as should be reasonably necessary for the requirements of the business of the firm, and duly complied with all the articles of partnership on his part."

The plaintiff in his complaint alleges that the partnership was dissolved September 15, 1891, by mutual consent. The defendant by his answer admits that it was then dissolved, and alleges that it " was dissolved because of the refusal of the plaintiff to contribute the capital as agreed in said articles of co-partnership."

June 10, 1891, the defendant wrote the plaintiff as follows :

"*June* 10*th,* 1891.

"My dear BURGESS,

"Yours rec'd. In talking with you the other day, I told you I thought the present co-partnership expired under its articles on Oct. 15th. In reading them over I find it expires on six months' written notice. Be this as it may, I do not think we shall have any trouble in terminating it, when it appears to be to the interest of all concerned. *   *   *

"Yours,
"W. S. BADGER."

So far as the record shows this was the first that was written or said between the partners about dissolving the firm. On the fifteenth of June, 1891, the partnership then having existed for eight months, the plaintiff notified the defendant, in writing, that the partnership would be dissolved six months from that date.

Subsequently, and on the 15th of September, 1891, the firm was dissolved. From this fact and the other evidence it is apparent that

FIRST DEPARTMENT, DECEMBER TERM, 1894.          [Vol. 82.

the dissolution, which occurred long before either partner could have compelled it, was the result of a mutual agreement. The defendant alleges in his answer that he consented to the dissolution because the plaintiff had failed to perform the second article before quoted, for which he claims $25,000 damages. The fact that the defendant made up a final statement of the affairs of the firm on the 29th of April, 1892, without preferring any claim for damages, and never having suggested such a claim until after the plaintiff refused to allow the two items in his account, is a significant one, and greatly discredits the validity of the defendant's claim for damages. It is singular that the defendant failed to discover, or at least to complain, that the plaintiff had broken his covenant, to his damage in so large an amount, until a disagreement arose over the account. Without repeating the evidence which sustains the findings, we are of the opinion that the facts were well found, and that they are sustained by the evidence. This brings us to the question whether the defendant was entitled to recover for winding up the affairs of the firm. Upon this issue the court found:

"VII. There was no agreement between the said partners that the defendant Badger should be allowed any amount for liquidating the business, and no claim was made by the defendant Badger that he should be entitled to be paid any amount for liquidating the business before the rendition of the said account on or about April 29, 1892, and the defendant is not entitled to charge the plaintiff with any amount for liquidating the business."

This finding is amply sustained by the evidence. The defendant did not testify that the plaintiff, at any time, agreed that compensation should be made for liquidating the affairs of the firm, and the plaintiff testified that there was no such agreement. On the contrary, he testified: "Mr. Badger said there should be no expense for collection. I offered to collect without any expense. Mr. Badger said there would be no trouble and no expense." The defendant denied that he agreed to collect without compensation, or that the plaintiff offered to liquidate the affairs of the firm without compensation. The defendant testified: "It was finally determined between Mr. Burgess and myself to dissolve the firm on the 15th of September, 1891. The stock of goods we had on hand at that date aggregated $300,000. The outstanding accounts owing us amounted to

$495,059.94. The trial balance shows that amount exactly. Mr. Burgess was here at the date of the dissolution, and talked the matter over with me. He wanted to put the settlement of the affairs of the business into the hands of a third party, and I declined to allow that. He then wanted to put it in the hands of a receiver, which I also declined."

On his cross-examination he testified : " There was a conversation between us on this subject of who should do the liquidating, at my office, 105 Worth street, New York, or it might have been at lunch — at one of these two places. I think we had several conversations on that subject. The whole subject of the matter was that he wanted to put this business into the hands of a third party to liquidate. He said a third party. He did not mention whom he wanted. I declined. Then he wanted to put it into the hands of a receiver. I declined to allow that. I told the proper place to liquidate that business was where it was carried on ; that is, where I wanted it to be done, at the former store. It was Van Bergen & Co.'s store after that. He finally consented to that. I have no recollection of saying that I wanted to liquidate that business because I was going on with these accounts, and I wanted to attend to collection with the old customers. The reason I put forward was I thought the business would be liquidated better and cheaper there."

The question whether a partner is entitled to compensation for winding up or liquidating the affairs of a firm after dissolution has arisen : (1) When a dissolution has occurred by operation of law, as by the death of a partner ; and (2) when a firm has been dissolved by the agreement of the partners. In the absence of an agreement, express or implied, that a surviving partner shall be paid for winding up the affairs of a dissolved partnership, he is not entitled to compensation for such services. (*Johnson* v. *Hartshorne,* 52 N. Y. 173–180 ; *Ames* v. *Downing,* 1 Bradf. 321 ; *Denver* v. *Roane,* 99 U. S. 355–358 ; *Beatty* v. *Wray,* 19 Penn. St. 516 ; *Brown* v. *McFarland,* 41 id. 129 ; *Tillotson* v. *Tillotson,* 34 Conn. 333–366.)

Care should be taken to distinguish between the cases arising over claims for compensation for winding up the affairs of a partnership which has been dissolved and those arising over claims for compensation for continuing, after the death of a partner, the business of the firm, pursuant to the articles, or with the consent of the per-

sonal representative of the deceased partner who receives the profits arising from the continuation of the business. *Robinson* v. *Simmons* (146 Mass. 167) is a type of this class of cases. For stronger reasons a liquidating partner, in case of a voluntary dissolution of a firm, is not, in the absence of an agreement, entitled to compensation, because the condition does not arise by operation of law, but by his assent, and the rule that, in such a case, the liquidating partner, in the absence of an agreement, express or implied, is not entitled to compensation for winding up or liquidating the affairs of the dissolved firm, is too well settled to be questioned. (*Coursen* v. *Hamlin*, 2 Duer, 513; *Dunlap* v. *Watson*, 124 Mass. 305; Story Part. [7th ed.] § 331, note; Pars. Part. [4th ed.] § 155 note 1; Coll. Part. [Perkins' ed.] § 199.)

The judgment should be affirmed, with costs.

Van Brunt, P. J., and Parker, J., concurred.

Judgment affirmed, with costs.