Lavinia Beard et al., Appellants, *v.* Mary A. Beard et al., Respondents.

Under the statute allowing commissions to trustees for "receiving and paying out" the moneys of the trust estate, they are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and the moneys paid out on which commissions may be charged are moneys paid out for debts, expenses, legacies, etc.; payments which operate to diminish the estate.

Commissions may not be charged on moneys disbursed and received in the conduct of a business carried on to produce net income, but only upon the net income which increases the *corpus* of the estate.

While, as a general rule, commissions are only to be allowed to trustees on settlement of their account, where they have rendered the services in conducting a business for which the law allows the commissions, and it appears from the situation of the estate, the nature of their duties and the character of the business, no injury or loss can be inferred from their taking in good faith and supposing they were entitled thereto, their commissions in advance of an accounting, they are not chargeable with interest thereon.

By the will of B. he directed his executors and trustees to keep, improve and manage certain property, and carry on the business connected therewith as freely and fully as he could if living. In carrying on the business the trustees paid out large sums of money, their gross receipts were $600,000 and they made a net profit of over $300,000. *Held*, that the trustees were not entitled to commissions upon the whole gross receipts, but only upon the net profits.

(Argued October 25, 1893; decided November 28, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 13, 1893, which affirmed a judgment in favor of defendants entered upon the report of a referee.

This action was brought by plaintiffs as executors and trustees under the will of William Beard for the judicial settlement of their accounts.

The facts, so far as material, are stated in the opinion.

*George Hoadly* for appellant Lawrence. The trustees are entitled to commissions upon their necessary disbursements

made in conducting the storage and wharfage business at Erie basin. (Code Civ. Pro. § 2737 ; *In re Bank of Niagara,* 6 Paige, 213 ; *In re Kellogg,* 7 id. 265 ; *In re Hayden,* 125 N. Y. 776.) Interest is not chargeable upon the commissions retained by the trustees. (*Hancox* v. *Meeker,* 95 N. Y. 528 ; *In re Mason,* 98 id. 527 ; *In re Selleck,* 111 id. 284.) Interest upon the amount of commissions allowed by the final decree ought not to have been charged against the trustees after the filing of their account. (*Redfield* v. *Y. I. Co.,* 110 U. S. 176 ; *O'Brien* v. *Young,* 95 N. Y. 428 ; *Hancox* v. *Meeker,* 95 id. 538 ; *Sanders* v. *L. S. & M. S. Ry. Co.,* 94 id. 641 ; *Donnelly* v. *City of Brooklyn,* 121 id. 19 ; *Ledyard* v. *Bull,* 119 id. 74 ; *Morley* v. *L. S. & M. S. R. Co.,* 146 U. S. 162, 168.)

*Johnson & Lamb* for appellant Beard. The judgment in this case goes far beyond anything elsewhere claimed against trustees, and should be reversed. (*Hancox* v. *Meeker,* 95 N. Y. 528 ; *In re Mason,* 98 id. 527 ; *In re Selleck,* 111 id. 284 ; *Andrews* v. *Goodrich,* 3 Dem. 245 ; *In re Goodrich,* 36 Hun, 299.) The rule that executors cannot retain or draw any commission until allowed by the Surrogate's Court, has no application to this case. (*In re Harris,* 4 Dem. 465 ; *Meachan* v. *Stearns,* 9 Paige, 398 ; 2 Perry on Trusts, §§ 918, 919 ; *In re Hawley,* 104 N. Y. 250.) If the court should find that the trustees could not draw those commissions from the trust funds before the account was filed, it will nevertheless, we submit, hold that, as money was from time to time properly received and paid out, the right ultimately to have commissions on such money was fixed and established. (*Betts* v. *Betts,* 4 Abb. [N. C.] 317 ; *Wheelwright* v. *Wheelwright,* 2 Redf. 201.)

*Sandford H. Steele* for respondent Hinman.

*Edward Hinman* for respondent J. R. Beard. The executors were not entitled to commission on the figures $246,550.74, made up in part by mere bookkeeping entries, but mainly by the repeated use of a small sum in the ordinary

course of the business. (Dayton on Surr. 535; *In re McAl-pine*, 126 N. Y. 285; *Betts* v. *Betts*, 4 Abb. [N. C.] 436; *In re Meserole*, 36 Hun, 298.) The executors had no right to use any funds of the estate for their own purposes, even though they honestly supposed that the court would ulti-mately allow the amount to them as commissions. (Code Civ. Pro. § 2802; *Wheelwright* v. *Rhoades*, 28 Hun, 57; Redf. on Surr. [4th ed.] 781; *Freeman* v. *Freeman*, 4 Redf. 211; *Whit-ney* v. *Phœnix*, Id. 180.) The executors are chargeable with interest on $28,144.71, funds of the estate which they applied to their own use from the time they took it until they return it. (*Griswold* v. *Chandler*, 5 N. H. 497; Dayton on Surr. 529; Redf. on Surr. 781; *Wheelwright* v. *Rhoades*, 28 Hun, 57; *Carroll* v. *Hughes*, 5 Redf. 337; *In re Peyser*, 5 Dem. 244; *Ogilvie* v. *Ogilvie*, 1 Bradf. 358; *Gardiner* v. *Gardi-ner*, 1 Edw. 129; *Hosack* v. *Rogers*, 9 Paige, 461.)

*Oliver T. Beard* for himself and Welton respondents. The contracts made by appellants with merchants to take their merchandise into and out of the warehouses, and with labor-ers, clerks, watchmen and the like, were the individual con-tracts of the executors. (*Willis* v. *Sharp*, 113 N. Y. 591.) All the receipts and expenditures on account of the business grew out of the investment and reinvestment of capital. (*In re Kellogg*, 7 Paige Ch. 265; *Morgan* v. *Hannahs*, 13 Abb. [N. S.] 361; *Betts* v. *Betts*, 4 Abb. [N. C.] 317, 436.) Executors managing a business cannot take commissions on the expenses of the business. (*In re Hayden*, 125 N. Y. 776; 51 Hun, 197.) Executors may not take their commissions before allowance by a surrogate, and if they do it is a misappropriation. (*Wheel-wright* v. *Rhoades*, 28 Hun, 57; *Carroll* v. *Hughes*, 5 Redf. 337; *Freeman* v. *Freeman*, 4 id. 211; *Whitney* v. *Phœnix*, Id. 180; *In re Peyser*, 5 Dem. 244; *Hancox* v. *Meeker*, 95 N. Y. 538.) An executor, when he is acting in the execution of a trust, created by a will which is separable from his func-tions as executor, is a testamentary trustee. (Code Civ. Pro. § 2514, subd. 6; *Johnson* v. *Lawrence*, 95 N. Y. 154.)

EARL, J.   William Beard died January 8, 1886, in the city of Brooklyn, leaving a will by which he disposed of a large estate.   Among the property disposed of was what is called the Erie Basin property, and that property he directed his executors and trustees to keep, improve and manage, and to carry on the business connected therewith as freely and fully as he could if living.   The trustees took possession of that property and thereafter managed it and carried on business thereon.   The will contained directions as to the disposition of the income from the property and business, which were substantially complied with by the trustees.   This action was commenced by the trustees for the judicial settlement of their accounts.   In carrying on the business they from time to time paid out large sums of money for expenses of the business, and their gross receipts were upwards of $600,000, and they made a net profit from the business of upwards of $300,000, and from time to time they drew and retained for their commissions upwards of $28,000.

It was held in the court below that the trustees were not entitled to commissions upon the gross receipts of the business, but only upon the net profits; that they were not entitled to take their commissions until they had been allowed by the court upon the accounting, and that they were chargeable with interest upon the commissions so taken until the date of the final decree in this action.   Whether the court erred in so holding is the matter for our determination upon this appeal.

Under the statute these trustees were entitled to receive for their services the statutory commissions for " receiving and paying out " the moneys of the estate.   What do these words " receiving and paying out " mean as used in the statute ? They are comprehensive enough if literally construed to embrace all moneys which came into the hands of the trustees as such, from whatsoever source or cause, and all moneys paid out by him as such on any account.   If a trustee invests money he pays it out, and when it is repaid to him he receives it again.   But it has been held that in such cases the money is not received and paid out within the mean-

ing of the statute. (*Matter of Kellogg*, 7 Paige, 265; *Betts v. Betts*, 4 Abb. [N. C.] 317, 436; *Drake v. Price*, 5 N. Y. 430, 433.) The same rule was laid down in *Matter of Hayden* (54 Hun, 197, affirmed in this court, 125 N. Y. 776). In that case the testator authorized his executors, in their discretion, to continue for a year the business of the manufacture and sale of furniture, in which he was engaged at the time of his death, and it was held that the executors were not entitled to commissions on the moneys paid out and expended in carrying on the business. Judge BARKER, writing the opinion in the Supreme Court, which was adopted by this court, said: "While it is apparent that the money was received and paid out in the execution of the provisions of the will and pursuant to the authority given by it, it nevertheless does not appear that from the business any profit or any advantage resulted to the estate. The buying and selling incident to the conduct of a manufacturing or other business is at best a species of re-investment of the trust funds. If commissions were to be allowed each time a stock in trade were purchased or sold, the executors' commissions would largely consume the body of the estate, especially where the stock in trade is rapidly turned over and no great profits realized from the transactions." Here many items of money, amounting in the aggregate to about $250,000, were disbursed in carrying on the business, all of which came back again to the trustees in the prices charged by them for the use of the basin and for services rendered by them to the patrons thereof, and in this way some of the money was turned over many times. It is plain that if a trustee, under such circumstances, is entitled to commissions on all the money received and disbursed, the commissions might eat up the *corpus* of the estate, as indicated by the chancellor in the *Kellogg* case and by Judge BARKER in the *Hayden* case. It is said by the learned counsel for the respondents that the rule laid down in those cases applies only to the investment and re-investment of the capital of the estate. The rule is not thus confined, and it was not so confined in the *Hayden* case, and the principle underlying the

decision in those cases requires that it should be applied to such a case as this. The rule may work harshly in some cases. In the *Hayden* case, the trustees received no commissions for carrying on the business, as they made no profits. Here large profits were made, and the commissions allowed by the court below gave ample compensation to the trustees for the services rendered by them. We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys which constitute the *corpus* of the estate, and any additions thereto from increase of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate and its net income; and the moneys paid out upon which commissions may be computed are the moneys paid out of the estate for debts, expenses of administration and to legatees or other beneficiaries, moneys which operate to diminish the estate as it exists in the hands of the trustees and pass out of and away from the estate. This rule excludes commissions upon investments and re-investments and moneys disbursed and received in the conduct of a business carried on to produce net income. In the case of such business, the commissions are to be computed on the net income only which came to the *corpus* of the estate as an increase thereof. If this rule does not in all cases give adequate compensation to trustees, no great injustice can flow from its operation, as trustees are not obliged to act and thus execute a trust which would be unprofitable or burdensome to them; and that the rule will operate beneficially in most cases and subserve the best public policy cannot be doubted.

The commissions of trustees are to be allowed on the settlement of their accounts, and the general rule is that they cannot be legally taken before. (Code, § 2802; 2 R. S. 93; *Wheelwright* v. *Rhoades*, 28 Hun, 57; *Hancox* v. *Meeker*, 95 N. Y. 528; *Matter of Mason*, 98 id. 527; *Matter of Selleck*, 111 id. 284.) There is an exception to the general rule where the trustees settle with the beneficiaries and pay out the residue of income or of the estate. There they may first

deduct and retain their commissions without waiting for a judicial settlement of their accounts. While, therefore, in this case the trustees had no legal right to any commissions until they were adjudged and allowed by the decree in this action, they had earned their lawful commissions at the time they took them. They had then rendered the services for which the law allows the commissions. They acted in good faith, honestly believing that they were entitled to take the commissions. It does not appear, and was not found, that by taking these commissions they caused any injury or damage to the estate; and from the situation of the estate, and the nature of their duties, and the character of the business they carried on, an injury or loss to the estate cannot be inferred. It does not even appear that they made a profit from the funds withdrawn for their commissions. They were held liable for the interest upon the sole ground that they took their commissions prematurely. Under such circumstances, we think it was error to charge them in this equitable accounting with the interest, and for this conclusion the case of *Price* v. *Holman* (135 . N. Y. 124), is ample authority. There we held that a trustee is not to pay interest solely for the reason that he deposits the trust moneys indiscriminately with his own, nor because he makes use of them in his own business; that there must be superadded a breach of trust, or neglect or refusal to invest the funds at the time or in the mode which the trust instrument, or the law itself, has pointed out, and we said: "The law exacts of a trustee fidelity to his trust. If he is guilty of fraud or the mismanagement of the trust fund, or is guilty of a breach of trust, or has used the trust funds for his own purposes, and made a profit therefrom, he may be compelled to pay interest, and in extraordinary cases compound interest, so as to place the *cestui que trust* in the same situation as if the trustee had faithfully performed his proper duty." Here all the elements as grounds of liability for interest on the commissions taken are wanting. It was not found, and does not appear, that the trust estate would have gained a dollar if the commissions had not been taken.

Our conclusion, therefore, is that the judgment below should be modified by striking therefrom the charge against the appellants of interest on the commissions allowed to them, and that, as thus modified, it should be affirmed, without costs to either party in this court.

All concur.

Judgment accordingly.