In the Matter of the Estate of MORRIS SCHINASI, Deceased.

Surrogate's Court, New York County, December 31, 1936.

*Wright, Gordon, Zachry & Parlin*, for the trustee.

*Szold & Brandwen*, for the objectors.

*John Godfrey Saxe*, special guardian for infants.

DELEHANTY, S. By decision published in 162 Misc. 632 under date of June 26, 1936, the court commented on what it understood to be the sole question at issue on this accounting, to wit, the propriety of an expenditure for expert services. At the time of the decision the court was not aware that its directions respecting the computation of commissions were not acceptable to the accounting trustee and so made no comment thereon. That part of the published opinion which stated that the sole controversy

was in respect of the expenditure for expert service is withdrawn accordingly.

The issue here existing respecting commissions of the trustee promises an opportunity to obtain from the appellate courts an authoritative declaration on a subject which is of prime importance to trustees and to beneficiaries. Fiduciaries are entitled to compensation at the rate prescribed by statute. Beneficiaries, too, are entitled to have deducted only the commissions prescribed by statute. The subject is a vital one, especially because of the assertions now made by many corporate fiduciaries respecting the meaning of section 285 of the Surrogate's Court Act. The question is one of statutory construction. In determining what construction should be adopted consideration must be given of course to the prospective operation of the statute if construed as it is variously contended that it should be. The Legislature must be assumed to have considered the operation of the statute in large as well as in small estates and to have considered too the effect produced when two or more fiduciaries are entitled to commissions.

The controversy here is in respect of the right of a fiduciary to take commissions on gross rents. The views on that subject of the writer of this opinion have been expressed in *Matter of Byrnes* (159 Misc. 302). When that decision was written it was the expectation of counsel and of the court that the then pending proceeding would furnish an immediate opportunity for appellate review. That expectation has been disappointed and so in this present proceeding some phases of the subject are discussed since review is promised. It is desirable to restate in some measure the views expressed in *Matter of Byrnes* (*supra*) since comment should be made upon some matters not completely discussed there.

First it should be considered whether the five per cent on gross rents provided for in subdivision 9 of section 285 is a commission at all in the sense in which that word is used in the earlier subdivisions of the same section. If it is a true commission then subdivision 8 of section 285 gives to each fiduciary (not exceeding three) full commissions, provided the principal of the estate or fund accounted for amounts to $100,000 or more. If then the five per cent on gross rents is a true commission it follows that *fifteen* per cent on *gross* rents will be deductible in large estates with three or more fiduciaries, without regard to any other right of deduction from the same rents. Note of this unbearable burden on gross rents is made as a first step in determining what is the true construction of this statute.

Looking now at subdivisions 1, 2, 3 and 4 of section 285 consideration must be given to the phrase " for receiving and paying

out all sums of money." If that is to be interpreted as giving to the fiduciary two per cent commission on *gross* rents then, for the purpose of a construction of this statute, it must be assumed that an additional *six* per cent *on the gross* would be deductible if only the entire estate or fund exceeded $100,000 and if the fiduciaries numbered three or more.

If the five per cent is to be dealt with as a true commission (with the consequent possible deduction of a total of fifteen per cent in certain cases) and if the two per cent commission for receiving and paying out is applicable to *gross* rents then it is obvious that *twenty-one per cent of gross rents* may be deductible under the guise of commissions. Such a burden would be utterly insupportable. The Legislature must be assumed to have been aware of the business aspects of real property administration and so to have been aware that such a burden upon gross rents would deprive beneficiaries of all net rents and eventually of the principal, too. (*Matter of Althause,* 122 Misc. 279.)

It is not an imaginative situation which is presented by the discussion of the possibility of an interpretation which would involve three five per cent charges on gross rents. Attempt was actually made to catalog this five per cent charge as an ordinary commission subject to being doubled or tripled in an appropriate case. (*Matter of Arnolt,* 127 Misc. 579, 589.) The surrogate in the cited case held that the five per cent on rents was not a true commission but on the contrary was a single charge collectible only once no matter how large the estate and no matter how numerous the fiduciaries. That holding has apparently not been challenged since it was made. The attempt, however, is illuminating in this discussion of the proper statutory construction of section 285 of the Surrogate's Court Act.

If the view be accepted that the five per cent charge on rents is not a commission and hence the possibility is denied that that five per cent charge might be tripled in an appropriate estate, it would follow that the single charge of five per cent on gross rents, plus a two per cent charge on gross rents for each of three fiduciaries in an appropriate estate might produce a burden on gross rents of eleven per cent. That burden is equally insupportable by real estate generally. The result of such a holding would differ in no respect from a holding imposing a twenty-one per cent gross burden except in the rate of speed with which the capital value of the property would be swallowed up in paying commissions.

Still another contention is advanced by ingenious fiduciaries. They argue that the eleven per cent charge just referred to is not all that is deductible. They draw a distinction between " manage-

ment " for which five per cent is payable to them and some other items which they say are outside of " management." Some of them argue for allowance of brokerage commissions paid to outside brokers as an addition to the five per cent on gross rents. Others of them (for instance, the fiduciary here) ask for special disbursements for expert services in addition to the five per cent on gross rents. Once the principle is accepted that any such disbursement may be added to the five per cent charge on gross rents there is no point in logic at which a stopping place can be found; and unfortunate beneficiaries of trusts whose capitals include real property would find the gross rents charged in an appropriate case with three commissions of two per cent each, one additional charge of five per cent and then such further sums (perhaps another five per cent in toto) as the particular fiduciary might convince the particular judicial officer was proper. Argument was made by the fiduciary in *Matter of Byrnes* (*supra*) that the standard management charge of the Real Estate Board of New York would leave nothing for a fiduciary who employed managing agents. In reply it could be said that managing agents need not be employed. Honest agents can be found outside the Real Estate Board membership. The Real Estate Board charges for management are merely " recommended " and are subject to special contract changes. The field is wide open for private contract between the fiduciary and the managing agent. If the fiduciary wants to avoid all the work of management he should be willing to pay the cost of having a managing agent. Conversely, if the fiduciary wants some compensation he should do some of the work. The Legislature surely did not intend to give fiduciaries something for nothing when subdivision 9 of section 285 of the Surrogate's Court Act was enacted.

Still one other possible interpretation of the statute should receive notice. It is an interpretation which never has been pressed upon the court by any fiduciary so far as the writer of this opinion knows. It should not be ignored for that reason. That interpretation is one which would hold that the five per cent charge on gross rents is exclusive of all other charges in relation to gross rents and hence one which would bar the allowance of straight commissions even on any net balance of rents. This interpretation cannot be said to be without some substance. While subdivision 9 of section 285 of the Surrogate's Court Act says that the five per cent charge on rents is " in addition to the commissions herein provided " that language is not necessarily inconsistent with the idea that the commissions to which the five per cent on gross rents is to be added are the commissions on property received and paid out *other than rents*. Historically there may be some justification

for this interpretation. Administrators had a very limited contact with real property until the passage of section 123 of the Decedent Estate Law, effective September 1, 1930. Theretofore, of course, commissions were payable to administrators *on other than gross rents*. When the administrator was given the power generally to collect rents of real property he was entering into a field in respect of which he never theretofore had had any right to commissions at all. So, too, in the case of the executor the handling of real property and its rents is a matter of fairly recent development. It is only in the case of the trustee that there is a long history of real estate management. In the case of the trustee the practice antecedent to 1923 (when subdivision 9 of section 285 was introduced into the law) was to allow the trustee his reasonable costs of management. That the courts were none too liberal with trustees in respect of such costs is evident from the authorities. (*Matter of Binghamton Trust Co.*, 87 App. Div. 26.) As was stated in *Matter of Byrnes* (*supra*) it is a wholly reasonable concept of the action of the Legislature to assume that the five per cent charge on gross rents was intended to be a substitution for all of these miscellaneous judicial allowances which varied as the underlying facts varied which were presented to the courts. If this conception of the five per cent charge on gross rents is the true interpretation of the statute then the beneficiaries would be put substantially on the same plane as that of a private owner of real property. Nobody doubts that a private owner can have his property managed for five per cent of the gross. Indeed much lesser percentages will secure good service. And if a beneficiary argued that he ought not be penalized merely because his interests are in the hands of a trustee, who is to say that his position is not arguable at least?

Choice is to be made then among the respective interpretations here outlined, plus the one outlined in the opinion in *Matter of Byrnes* (*supra*). The one which might involve a twenty-one per cent charge on gross rents ought to be rejected out of hand. The one that might authorize a charge up to sixteen per cent of gross rents ought to be rejected out of hand. The Legislature ought not be charged with having placed upon the rents of real property held in a trust a burden which could not be borne. For the purpose of confirming the result reached in *Matter of Byrnes* (*supra*) the remaining two interpretations which the court rejects will be further analyzed.

As was pointed out in *Matter of Byrnes* (*supra*) there is no justification for the claim that standard commissions prescribed by subdivisions 1, 2, 3 and 4 of section 285 of the Surrogate's Court Act are payable on *gross* rents. The courts have repeatedly held

that the phrase — " for receiving and paying out all sums of money " — is not to be taken literally.

The in and out transactions in a business are held not to be the receiving and paying out contemplated as a base for commissions. (*Matter of Hayden*, 54 Hun, 197, 205; *Matter of Sidenberg*, 204 App. Div. 255.) The investment and reinvestment of capital furnishes no base for a charge of commissions. (*Matter of Kellogg*, 7 Paige, 265, 267.) Collateral pledged by a deceased and eventually redeemed by a fiduciary is to be taken as the base for commissions only to the extent of the equity in it. (*Matter of Mercantile Trust Co.*, 210 N. Y. 83, 86; *Farmers' Loan & Trust Co.* v. *Turner*, 242 id. 240, 245; *Matter of Mills*, 149 Misc. 389, 391; affd., 263 N. Y. 574.) The single principle which runs throughout all of these cases has been expressed in unmistakable terms by the Court of Appeals in *Beard* v. *Beard* (140 N. Y. 260, 265). That court said: " We think the true rule for allowance of statutory commissions is this: Trustees are entitled to commissions for receiving all moneys *which constitute the corpus of the estate, and any additions thereto from increase* of any kind, and thus the moneys upon which commissions are to be computed can never exceed the gross amount of the estate *and its net income.*" (Italics not in original.) This declaration of the basis upon which commissions are allowable compels rejection of the idea that gross rents are the basis for commissions or that eleven per cent of the gross might ever be deducted.

The remaining problem is whether the statute warrants the interpretation that no charge whatever is to be made against rents except the five per cent charge on the gross. It seems to the court that there is enough in the rule of law stated in *Beard* v. *Beard* (*supra*), and enough in the work of administration involved in the allocation and actual payment of the net rents available for distribution, to warrant a holding that a regular commission is chargeable on the net in addition to the five per cent charge against the gross. Rents may be collected and the net be required for the payment of debts. Net rents may be subject to allocation in accordance with directions in a will. There is in any event the need to handle the net rents and make actual disbursement of them and so there is a rendition of service related to the net rents as such which warrants an allowance of the two per cent upon the net. Consequently the idea that the five per cent charge on the gross rents is exclusive and all comprehensive should be rejected. And for the reasons stated the court adheres to the rule of *Matter of Byrnes* (*supra*).

Particular instances may readily be cited of supposed hardship to trustees. Specialty properties may be difficult to rent. The five per cent charge on the gross rents received may not in every instance cover a broker's commission if a broker be employed. Particular conditions affecting real estate may make its management onerous and in individual instances five per cent of the gross rents may not be fair compensation. Contra these instances is to be set the substantially unearned increment to trustees who take charge of properties under net leases. (*Matter of Brennan*, 251 N. Y. 39.)

The case here for decision furnishes a good illustration of the workings of the rule outlined in *Matter of Byrnes* (*supra*) and here confirmed. The computation supplied by the accounting trustee shows gross rents collected of slightly more than $340,000 over a four-year period. In that same period the brokerage charges incurred amounted only to $4,401.25. The brokerage charges are slightly more than one and one-fourth per cent of the gross rents. The trustee, therefore, has been paid apart from the brokerage slightly less than three and three-fourths per cent or more than $12,500 over the four-year period. Against this $12,500 the trustee must charge the cost of the expert's services which by prior decision has been disallowed. The balance is still substantial.

In the *Byrnes* case the trustee was managing a property which produced $300,000 annually. Five per cent of this gross is $15,000. The rates for management recommended by the Real Estate Board to its membership would have required payment of only $7,500 to a managing agent who took full charge of the property. Even that disbursement would have left $7,500 net in the hands of the trustee with all management cares borne by someone else. Out of that $7,500 the trustee would be required only to pay any brokerage which it might have incurred.

Trustees must take and beneficiaries must allow what the law prescribes. If fiduciaries are not content with what the law gives them the language of the Court of Appeals in *Beard* v. *Beard* (*supra*) is applicable: " If this rule [regulating commissions] does not in all cases give adequate compensation to trustees, no great injustice can flow from its operation, as trustees are not obliged to act and thus execute a trust which would be unprofitable or burdensome to them; and that the rule will operate beneficially in most cases and subserve the best public policy cannot be doubted." Service as a fiduciary is always voluntary. If the service proves burdensome that is a risk which the fiduciary takes when he accepts the designation.

The authorities here cited and those discussed in *Matter of Byrnes* (*supra*) establish (1) that the five per cent charge on gross rents

is a single charge for management no matter what the value of the gross estate and no matter how many in number the fiduciaries may be, (2) that such five per cent charge excludes all other charges against gross rents whether for clerk hire, managing agents' fees, brokerage for leasing space or for any other purpose, (3) that the so-called normal or regular commissions are not to be computed on the basis of the gross rents received, (4) that normal or regular commissions are payable only upon the net rents and (5) that such net is the amount *distributable beneficially to the persons interested in the estate* and hence is the balance left after payment of housekeeping charges, mortgage interest, taxes, water rents, brokerage, management expenses and every other operating charge, plus the five per cent charge on gross allowable under subdivision 9 of section 285 of the Surrogate's Court Act.

By stipulation of the parties this additional commentary is added to the decision heretofore filed and is to be deemed a part of the decision on this accounting. The decree has already been signed.